UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 12-204-DLB

RICHARD S. TOIKKA and MARJORIE E. REEDER                           PLAINTIFFS

vs.                    MEMORANDUM OPINION AND ORDER

JAMES WENDALL JONES, et al.                                        DEFENDANTS

* * * * * * * * *

## I.   INTRODUCTION

This matter is currently before the Court on the Court's own motion to properly ensure that it has subject matter jurisdiction over this case. The Court previously ordered briefing from the parties on whether Plaintiffs have established that diversity jurisdiction exists in this action. That briefing has now been submitted. (*See* Docs. # 17 & 18). Because Plaintiffs cannot meet the amount in controversy requirement of 28 U.S.C. § 1332 without relying on excessive punitive damages claims that would violate due process guarantees, the Court will dismiss their Complaint without prejudice for lack of diversity jurisdiction.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, on October 18, 2011, Plaintiffs Richard Toikka and Marjorie Reeder were involved in a verbal dispute with Reeder's parents, James and Evelyn Jones, while visiting the Jones family farm in Mount Olivet, Kentucky. The dispute occurred mainly inside the Jones' residence. During the dispute, David Gallenstein, a

1

friend of the Jones family, entered the residence, observed what was happening, and phoned Reeder's brother, J.W. Jones. Jones directed Gallenstein to intentionally block the block the farm's exit until he arrived.

Plaintiffs eventually decided to leave the farm. As they walked outside the Jones' residence, they were confronted by J.W. Jones, who had recently arrived at the farm. Jones allegedly "approached Toikka with a raised and clenched right fist and threateningly stated: 'I can take you out.'" (Doc. # 1 at ¶ 17). However, Eveleyn Jones prevented any violence by stepping in between the two men.

Plaintiffs then got into their car and drove half-way down the roadway toward the farm's exit when they noticed that the exit was blocked by a parked vehicle. Plaintiffs could see other people and vehicles near the farm gate, but could not tell what was going on. Evelyn Jones approached Plaintiffs' car and explained that the exit was being blocked by David Gallenstein, a friend of the Jones family, who had managed to get his feet stuck in a cattle gate. While Plaintiffs waited in their vehicle, J.W. Jones "hit his clenched fist menacingly on the passenger side window" and yelled at Reeder that he would sue her if she ever returned to the farm. (*Id.* at ¶ 20). After more than an hour, Gallenstein was extricated from his unfortunate predicament, and Plaintiffs were able to drive away without further incident.

Plaintiffs later discovered that J.W. Jones had reported the family dispute to Robertson County Sheriff Randy Insko. According to Insko's subsequent Report, which is attached to the Complaint, J.W. Jones told Insko that his sister, Reeder, pushed their mother, Evelyn Jones, and called her a "bitch." J.W. Jones admitted that he was reporting second-hand information he had heard from Phil and Dana Mitchell, neighbors of the Jones

family, who allegedly witnessed the pushing incident.

Plaintiffs initiated the instant case with the filing of their Complaint on October 5, 2012. (*See* Doc. # 1). In their Complaint, Plaintiffs jointly allege false imprisonment against Defendant David Gallenstein (Count 1), conspiracy to wrongfully imprison against Defendants J.W. Jones and Gallenstein (Count 2), and assault against Defendant J.W. Jones (Count 3). In addition, Plaintiff Reeder alleges slander per se, or in the alternative slander per quod, against Defendants Phil and Dana Mitchell (Count 4) and defamation per se, or in the alternative defamation per quod, against Defendant J.W. Jones (Count 5). Plaintiffs seek compensatory and punitive damages for all counts under Kentucky law. They allege that subject matter jurisdiction is proper under 28 U.S.C. 1332.

### III.   ANALYSIS

"In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Klepper v. First American Bank,* 916 F.2d 337, 340 (6th Cir. 1990) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). To determine whether the amount in controversy has been met, the district court must examine whether (1) the plaintiff has set forth a legal basis for his claim, and (2) there is "some chance" he could recover the claimed amount of damages. *Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005).

A.

The first element only tests whether a plaintiff has pleaded all the elements of his claim. It does not test whether Plaintiff's claim would survive a Rule 12(b)(6) motion to dismiss. Thus, even if the complaint "discloses the existence of a valid defense to the

claim," this is not enough to warrant dismissal. *See Red Cab*, 303 U.S. at 288-290. "[U]ltimate loss on the merits, even if based on a legal argument that is clear from the outset, is not enough to preclude jurisdiction, where the claim is apparently in good faith" *Kovacs*, 406 F.3d at 395. The district court is thus limited to a "superficial" examination of a plaintiff's claim. *Id.* at 396-98. Here, Plaintiffs have pleaded the requisite elements of assault and defamation, but have failed to plead the requisite elements of false imprisonment and conspiracy to wrongfully imprison.

Assault is "an unlawful offer of corporeal injury to another by force, or force unlawfully directed toward the person of another, under such circumstances as create a well-founded fear of immediate peril." *Brown v. Crawford*, 177 S.W.2d 1, 2-3 (Ky. 1944). Assault also requires that the defendant possess the requisite intent. *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). Plaintiffs allege that J.W. Jones came close to Toikka "with a raised and clenched right fist and threateningly stated: 'I can take you out.'" (Doc. # 1 at ¶ 17). By this conduct, Plaintiffs allege that Jones "intended to and did induce a reasonable fear of an offensive conduct." (*Id.* at ¶ 48). Plaintiffs have thus pleaded the necessary elements of assault.

To state a claim for defamation, a plaintiff must show: (1) defamatory language about the plaintiff; (2) which is false; (3) which is published; (4) which caused injury to the plaintiff's reputation. *CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1083 (W.D. Ky. 1995). Here, Plaintiffs allege slander per se, or in the alternative, slander per quod. The difference between the two theories is that in a defamation per se action, the law presumes damages, whereas in a slander per quod action, no such presumption arises. *Id.* Words are slanderous per se when they

4

> "tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society. But it is not necessary that the words imply a crime or impute a violation of laws, or involve moral turpitude or immoral conduct."

*Id.* By contrast, "[i]n a per quod action, the words themselves may or may not be defamatory. Courts focus not upon the actual meaning of the words but on the extrinsic facts which explain the meaning of the communications." *Id.*

In the instant case, Plaintiffs have pleaded the necessary elements of defamation. Count 4 alleges that Defendants Phil and Dana Mitchell told J.W. Jones that they "witnessed Marjorie Reeder push Evelyn Jones and call her a 'bitch.'" (Doc. # 1 at ¶ 25). It further alleges that the statement "was repeated to other third parties either by [the Mitchells] or by J.W. Jones." (Doc. # 1 at ¶ 56). It also alleges that the Mitchells acted with malice in making this statement because they knew it was false or because they acted with reckless disregard of its truth or falsity. Count 5 alleges that J.W. Jones repeated this allegedly slanderous statement to Sheriff Randy Insko and to other third parties, and that he showed Sheriff Insko's subsequent Report to third parties including Gallenstein and J.W. Jones' daughter. (*Id.* at ¶ 68). According to Plaintiffs, the statement in question was slanderous per se under the above-stated definition. In the alternative, they allege that the statement constituted defamation per quod, and claim they will prove special damages at trial. (*Id.* at ¶ 69). In light of these allegations, Plaintiffs have met their pleading burden on their defamation claims.

However, Plaintiffs have failed to meet their pleading burden on their claims for false imprisonment and conspiracy to wrongfully imprison (Counts 1 and 2). False imprisonment is "deprivation of the liberty of one person by another or detention for however short a time

without such person's consent and against his will, whether done by actual violence, threats or otherwise." *Banks*, 39 S.W.3d at 479. A plaintiff must be aware that he is being confined during the confinement. *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). Here, Plaintiffs have failed to properly plead that they were actually confined, and that they were aware they were being confined. The Complaint vaguely asserts that "[i]t became clear to [them]" while they sat in their car on the Jones' farm "that Gallenstein had intentionally parked his vehicle in the roadway preventing them from leaving." (Doc. # 1 at ¶ 21). However, Plaintiffs never explain how this supposed fact "became clear" to them. In fact, the Complaint reveals that Plaintiffs did not know why the gate exit was being blocked. As they sat in their car, they could see vehicles and people near the gate, but they do not claim to have seen Gallenstein himself, or to have recognized his vehicle. Evelyn Jones eventually explained to them that Gallenstein's feet were stuck in the gate. Plaintiffs had no information at that time to suggest that either Gallenstein or J.W. Jones were intentionally confining them on the farm. What's more, Plaintiffs admit that it was not until at least several days later that they learned from Insko's Report that J.W. Jones had told Gallenstein to intentionally block Plaintiffs' exit from the farm. Because the Complaint lacks adequate allegations of confinement and knowledge of confinement, Plaintiffs have not set forth a valid claim for false imprisonment. And without a valid false imprisonment claim, they cannot maintain their claim for conspiracy to wrongfully imprison (Count 2), since civil conspiracy actions "are premised on damages sustained from an underlying tort." *See GATX Corp. v. Addington*, 879 F.Supp.2d 633, 649 (E.D. Ky. 2012) (citation omitted). Due to these pleading defects, Plaintiffs must meet the amount in controversy solely through their assault and defamation claims.

B.

The second element in the Court's amount in controversy analysis is whether there is "some chance" Plaintiffs could recover the claimed amount of damages. *Kovacs*, 406 F.3d at 395. The general rule in the Sixth Circuit is that "a court will find absence of jurisdictional amount to a legal certainty when state law bars recovery of the *type of damages* claimed." *Klepper*, 916 F.2d at 341; *accord*, *Kovacs*, 406 F.3d at 396 ("where . . . state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement.") (citations omitted). Since Kentucky law permits both compensatory and punitive damages for assault and defamation,[1] it is technically possible for Plaintiffs to exceed the jurisdictional threshold of $75,000.[2][3]

To exceed that threshold, however, Plaintiffs would be forced to rely on excessive punitive damage claims—a tactic that several circuit courts of appeals have held is impermissible. *See, e.g.*, *Zahn v. International Paper Co.*, 469 F.2d 1034 n. 1 (2d Cir. 1972); *Kahal v. J.W. Wilson & Assocs., Inc.* 673 F.2d 547, 548 (D.C. Cir. 1982); *Anthony*

---

[1] *See Mann v. Watson*, 283 S.W. 1052, 1054 (Ky. 1926) (assault); *White v. Manchester Enterprise, Inc.,* 910 F.Supp. 311, 315 n. 4 (E.D. Ky. 1996) (defamation) (citation omitted).

[2] Because Kentucky provides for punitive damages by statute, the Sixth Circuit has held that such damages must be considered in determining whether the amount in controversy has been met, unless it appears to a legal certainty that they cannot be recovered. *Kovacs*, 406 F.3d at 396; *see also*, *Hayes v. Equitable Energy Resources* Co*.,* 266 F.3d 560*,* 572 (6th Cir. 2001).

[3] Defendants argue that Plaintiffs have not supported their punitive damage claims with adequate allegations of malice. However, Defendants misunderstand the pleading standard at issue. Plaintiffs need not plead the facts giving rise to malice with any degree of detail. For instance, in *Klepper*, the Sixth Circuit found that the plaintiff had adequately pleaded malice for amount in controversy purposes by alleging that defendant's actions were "intentional, oppressive, fraudulent, and malicious." 916 F.2d at 341. Here, Plaintiffs have met this basic pleading standard. For instance, Plaintiffs' assault claim alleges that J.W. Jones' actions were "willful, malicious, oppressive and taken without justification, amounting to conscious wrongdoing . . . ." (Doc. # 1 at ¶ 52). Accordingly, Plaintiffs' allegations of malice are sufficient.

*v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 318 (7th Cir. 1996). These circuits base their holdings on the Supreme Court's decision in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003), where the Court held that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," and that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." Since excessive punitive damages awards are not recoverable as a matter of law under *State Farm*, the aforementioned circuit courts of appeals reason that complaints which rely on such awards for jurisdiction do not meet the amount in controversy requirement.

Thus, for instance, where a plaintiff sought punitive damages of more than $69,500, nearly thirteen times the compensatory damages claimed, the Circuit Court of Appeals for the District of Columbia held that subject matter jurisdiction was lacking. *Kahal,* 673 F.2d at 548. As the court explained:

> "[w]hen the existence of federal jurisdiction depends on a claim for punitive damages, the court should 'scrutinize the punitive damages claim to ensure that it has at least a colorable basis in law and fact . . . . Liberal pleading rules are not a license for plaintiffs to shoehorn essentially local actions in to federal court through extravagant or invalid punitive damage claims.'"

*Id.*

The Sixth Circuit has not expressly adopted this due process approach in a published opinion. However, in an unpublished opinion, the Sixth Circuit affirmed an order from this Court dismissing a complaint that relied overwhelmingly on punitive damages to meet the amount in controversy requirement. In *Klepper v. Osborne*, No. 94-5571, 1994 LEXIS 28710 (6th Cir. Oct. 11, 1994), this Court had dismissed a complaint where the plaintiff sought $3,000 in compensatory damages and $500,000 in punitive damages. *Id.*

at *3-4. On appeal, the Sixth Circuit held that punitive damages "must bear some relationship to actual damages, though not necessarily a proportional relationship." *Id.* at *4 (citation omitted). The court thus found the dismissal proper, since the plaintiff would not have been able to meet the amount in controversy "even if [he] were able to recover the entire alleged compensatory damages and also [punitive] damages ten times this amount . . . ." *Id.*

The Western District of Kentucky has also applied the due process approach to scrutinize diversity complaints for excessive punitive-to-compensatory damage ratios. *See, e.g.*, *Cobble v. Value City Furniture*, No. 3:06-CV-00229-S, 2006 WL 1687963 (W.D. Ky. June 19, 2006) (finding that the 65:1 ratio sought by the plaintiff did not establish the amount in controversy); *Proctor v. Swifty Oil Co., Inc.*, 2012 WL 4593409 (W.D. Ky. Oct. 1, 2012) (finding that the ratio of 2:1 sought by the plaintiff established the amount in controversy).

The Court finds the reasoning of these cases persuasive, and adopts the due process approach in evaluating the instant case. Accordingly, based on the standard enunciated in *State Farm* and applied by the aforementioned federal courts, the Court cannot envision any scenario in which Plaintiffs could meet the amount in controversy requirement without relying upon a punitive-to-compensatory damage ratio that violates due process guarantees. Even if Plaintiffs were to obtain $10,000 in compensatory damages on their assault and defamation claims—a result the Court finds nearly impossible based on the allegations in the Complaint, they would still have to recover a punitive damages award nearly eight times larger to meet the jurisdictional requirement. Such an award would not satisfy due process. Therefore, the Court will dismiss the Complaint without

prejudice. The Court refuses to permit Plaintiffs to "shoehorn [an] essentially local action [ ] in to federal court through extravagant or invalid punitive damage claims." *Kahal,* 673 F.2d at 548 (internal quotation omitted). To hold otherwise would be to diminish the amount in controversy requirement and ignore the clear import of *State Farm*.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) Plaintiffs' Complaint (Doc. # 1) is hereby **dismissed without prejudice**, for want of subject matter jurisdiction;

(2) Plaintiffs' motion to disqualify Attorney John F. Estill and the Law Firm of Fox, Wood, Wood, & Estill from Representing Defendant James Wendall Jones and for a Temporary Stay of Proceedings (Doc. # 13) is **denied without prejudice**; and

(3) The Clerk of the Court shall strike this case from the Court's active docket. This 12th day of March, 2013.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\Covington\2012\12-204 - MOO dismissing complaint without prejudice.wpd